FILED
2023 Dec-05  PM 02:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| **DESIREE GARCIA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 5:22-cv-1396-LCB** |
| ) | |
| **KILOLO KIJIKAZI,** *Acting* ) | |
| *Commissioner, Social Security* ) | |
| *Administration,* ) | |
| | |
| **Defendant.** | |

### <u>MEMORANDUM OPINION</u>

On November 2, 2022, the Claimant, Desiree Garcia, filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). The Commissioner filed an answer and a copy of the administrative record on February 6, 2023. (Doc. 9). Garcia filed a brief in support of her position on March 8, 2023, and the Commissioner filed a response on May 9, 2023. Garcia did not file a reply brief. Accordingly, the issues are now fully briefed, and Garcia's case is ripe for review. For the reasons that follow, the Commissioner's final decision is due to be affirmed.

### I.    Background

Garcia protectively filed an application for a period of disability and disability insurance benefits on January 6, 2021, alleging disability beginning the same date. (Tr. at 10).[1]   Her claim was denied initially on August 10, 2021, and upon reconsideration on October 18, 2021.[2]   Garcia then requested a hearing before an Administrative Law Judge ("ALJ"), which was held telephonically[3] on March 28, 2022.  Garcia testified at the hearing, as did an impartial vocational expert ("VE").  The ALJ subsequently issued an unfavorable decision.  Garcia requested review of the ALJ's decision by the Appeals Council, but that request was denied on May 5, 2022, and the ALJ's decision became the Commissioner's final decision.  This lawsuit followed.

## II.    The ALJ's decision

After the hearing, the ALJ issued a written opinion explaining his decision. (Tr. at 15-24).  In issuing his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration.  *See* 20 CFR 416.920(a).  The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

---

[1] "Tr" denotes the consecutive page numbers in the transcript prepared by the Commissioner appearing in the Court's CM/ECF system at (Doc. 9).
[2] According to the Commissioner, Garcia has previously applied for and been turned down for Social Security benefits for the same or similar conditions.  (Tr. at 15, 62).
[3] All parties agreed to a telephonic hearing as a precaution against COVID-19.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit.  If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops.  Otherwise, the ALJ will proceed to step two.  In the present case, the ALJ found that Garcia did not engage in substantial gainful activity during the relevant period.  (Tr. at 17). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  20 CFR 416.920(c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…."  *Id.*  If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends.  If she does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Garcia had the following severe impairments: degenerative disc disease of the spine, migraine headaches, obesity, and affective disorder.  (Tr. at 17 (citing 20 CFR 416.920(c)).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I.  If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is

disabled, and the evaluation ends.  Otherwise, the ALJ proceeds to the next step.  In this case, the ALJ found that Garcia's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four.  (Tr. at 17).

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work.  20 CFR 416.920(f).  The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset.  If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops.  Otherwise, the evaluation proceeds to the final step.  In Garcia's case, the ALJ found that she had the following RFC:

> [T]he claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 416.967(b) with the following limitations: The claimant is limited to lifting and carrying up to twenty pounds occasionally, ten pounds frequently; stand and walk for six hours of an eight-hour workday; sit for six hours of an eight-hour workday; occasionally climb ramps, stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; avoid all exposure to hazardous moving machinery and unprotected heights. Furthermore, she is limited performing simple, routine tasks learned by rote or short demonstration or beyond a short demonstration up to and including one month with simple instructions, occasional workplace changes, occasional judgment required, and no more than occasional contact with the general public.

(Tr. at 19).

The ALJ then determined that Garcia had no past relevant work experience. However, considering her age, education, work experience, and residual functional

capacity, the ALJ found that there are jobs existing in significant numbers in the national economy that Garcia can perform.  (Tr. at 23-24).  Specifically, the ALJ accepted the VE's testimony that an individual with Garcia's RFC could perform jobs such as that of a stock clerk, sorter, or marker.  *Id.*  According to the VE, those jobs exist in sufficient number in the national economy.  Based on the findings above, the ALJ determined that Garcia was not disabled as defined by the Social Security Administration.  (Tr. at 24).

## III.    Standard of Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted).  "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Zuba-Ingram v. Commissioner of Social Security*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Booth v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991). If the ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Booth*, 284 F.3d at 1225; *see also Foote v. Chater*, 67 F.3d 1553, 1562 (11 Cir.1995).

## IV.    Garcia's arguments

Garcia raises a single, overarching argument in her brief: "Whether substantial evidence supports the ALJ's determination that the Plaintiff has the residual functional capacity to perform a range of light work." (Doc. 11 at 4). According to Garcia, the ALJ failed to properly articulate his reasoning for discrediting her testimony about her pain. Specifically, Garcia claims that the ALJ's findings regarding the severity of her migraine headaches was not supported by substantial evidence and that it was error for the ALJ to rely solely on her reported daily

6

activities to discredit her pain testimony.  The Court will address these arguments below.

## A. Each of the ALJ's determinations were supported by substantial evidence.

According to Garcia, the ALJ's RFC determination was not supported by substantial evidence.  In her brief, Garcia first argues that the ALJ failed to properly evaluate her complaints of pain consistent with the Eleventh Circuit's pain standard.  Garcia alleged disability, in part, because of debilitating migraine headaches and back pain.[4]  While the ALJ determined that Garcia's medically determinable impairments could reasonably be expected to produce some, but not all, of Garcia's alleged symptoms, he found that her statements concerning the intensity, persistence, and limiting effect of those symptoms diminished her capacity to work only insofar as they are consistent with the medical evidence and other evidence in the record.  Specifically, the ALJ found that Garcia's statements about the severity of her pain were not sufficiently supported by the record in light of the medical findings, her medical history, and the degree of medical treatment required.  The ALJ also found Garcia's own description of her daily activities to be inconsistent with the level pain she testified to.

---

[4] Garcia also claimed that she was disabled due to a mental illness.  However, she does not address that issue in her brief, and the Court will therefore not address it.

According to Garcia, the ALJ improperly found in his RFC determination that she could perform a range of light work on a sustained basis. Specifically, she objects to his determination that she would be able to "frequently lift or carry objects weighing up to ten pounds and require a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." (Doc. 11 at 8). According to Garcia, the ALJ improperly relied only upon the evidence that supported his conclusion—and ignored evidence to the contrary—in violation of Eleventh Circuit precedent. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir.1986) ("It is not enough to discover a piece of evidence which supports [a] decision, but to disregard other contrary evidence," and a decision is not supported where it was reached "by focusing upon one aspect of the evidence and ignoring other parts of the record"); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

Garcia claims this improper "cherry picking" is evident in the ALJ's analysis of her physical capabilities related to her lumbar degenerative disc disease. Noting the ALJ's finding that she was capable of light work, Garcia points to the evidence he used in support, *i.e.*, that her treatment for back pain was "apparently successful" and that her "medical records throughout the relevant period repeatedly documented

musculoskeletal improvement." (Tr. at 20). The ALJ also referenced a treatment note indicating that Garcia was doing well and that her gait and station were normal.

According to Garcia, the ALJ improperly ignored other evidence that was consistent with her allegations. For example, Garcia points to a record from 2020, before her alleged onset date, in which it was noted that she complained of severe pain in her back and right leg. (Tr. at 420). She also underwent epidural steroid injections to treat that pain. While Garcia admits that she reported her symptoms were improving, she points to a follow-up visit approximately a year later in which she reported "that her symptoms had returned and she was having increased back pain with numbness, tingling, and radiating pain down her right leg." (Doc. 11 at 9), citing (Tr. at 413). A review of that particular record reveals that the physician noted that the steroid injections were successful, but that she has returned "reporting that over the last 4 months symptoms have *started to return*. She is having numbness and tingling and pain radiating down the right leg as well as an increase in low back pain." (Tr. 413) (emphasis added). She also points to chiropractic records indicating that her pain continued. However, in one record she cites in her brief, Garcia complained to the chiropractor about leg pain, not back pain or migraines. The other record she cited indicated that Garcia reported being "stiff and sore," and having "muscle tension and tenderness." (Tr. 469).

As Garcia herself noted, the ALJ relied on evidence that her pain was improving and that the various treatments, *e.g.*, the epidural steroid injections, were helping. However, she says, the ALJ should have considered the records noted above and, had he done so, would have concluded that she was disabled. The Court disagrees.

As noted, the Court's task here is to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). But this is precisely what Garcia is asking the Court to do.

At her hearing, Garcia testified that she has migraine headaches "24/7" and that she is "in constant pain 24/7." (Tr. at 35). She testified that she has a migraine every day and that it lasts all day long and, while the severity waxes and wanes, the pain "never goes away." *Id.* at 36. She then described her migraines with more particularity and discussed how they affect her daily life. As noted, the ALJ did not find this testimony fully credible and determined that Garcia's allegations about her pain and its impact on her ability to work were not sufficiently supported by the record in light of the medical findings, her medical history, the degree of medical treatment required, and Garcia's own description of her daily activities.

10

As noted, Garcia accuses the ALJ of cherry-picking evidence that supported his preferred outcome. However, the record does not support that assertion. As Garcia herself notes, the ALJ did discuss some of the findings that she claims point to disability. *See* (Tr. at 20 (noting, among other things, findings from a 2020 MRI)). However, the ALJ then weighed that evidence against the contrary evidence noted above, *i.e.*, lack of medical findings, degree of treatment required, and Garcia's daily activities. What Garcia calls cherry picking could be more aptly described in this case to be a careful weighing. While the ALJ certainly focused more on certain pieces of evidence than others, nothing in his opinion suggests that he completely ignored the other evidence. In fact, the ALJ noted several pieces of evidence that would support Garcia's claim. For example, he noted her complaints of pain and discussed the results of an MRI that was performed in 2020 showing "the presence of multi-level discogenic degenerative changes [and] [d]isc herniations at the L3-4 and L4-5 level were noted with significant canal narrowing and lateral recess narrowing." (Tr. at 20). He also noted that Garcia took several medications, went to physical therapy, and had steroid injections. *Id*. Unfortunately for Garcia, the ALJ weighed this evidence adversely to her, and did not find it to tip the scale in her favor. It would be improper for this Court to tip it the other way.

Garcia raises a similar claim about the ALJ's findings regarding her migraines. She points to the ALJ's finding that there were no objective tests that

would explain her alleged constant, severe pain.  She also noted that the ALJ highlighted the fact that her treatment has not been aggressive.  Like she argued above, Garcia claims that the ALJ cherry-picked the evidence he favored and ignored the evidence that did not support his desired conclusion.  As in her previous argument, she points to instances in the record where she reported worsening headaches to medical providers and where she was treated for her migraines.  But the ALJ's opinion indicates that he did consider this evidence.  However, when he weighed it against other evidence, including the absence of objective medical tests or aggressive treatment that would be expected for an individual who experiences constant disabling pain, he found it to be lacking.  The ALJ was presented with medical records suggesting that Garcia has stated to medical providers that she is in constant pain, but none have been able to find a medical cause that would explain precisely what Garcia is describing.  The ALJ gave more weight to this lack of evidence and aggressive treatment than he did to Garcia's own self-reports.  It would be error for this Court to reweigh that evidence in this proceeding.

Garcia also points to the ALJ's finding that her doctors had not recommended or prescribed any type of assistive devices for her, nor had they placed any type of restrictions on her activities.  According to Garcia, this does not constitute substantial evidence.  However, as noted above, this was not the only thing the ALJ

relied on but was one of many pieces of evidence that he considered in arriving at his decision.

Finally, Garcia claims error with the ALJ's determination that her reported pain was inconsistent with her reported daily activities.  In his opinion, the ALJ noted that Garcia testified to being "able to prepare meals, do light household chores, take care of personal needs, drive, shop for groceries, and handle financial transactions." (Tr. at 21).  He also noted that some of her reported activities fall within the parameters described in his RFC determination.  According to Garcia, the ALJ erred by ignoring the portions of Garcia's testimony in which she qualifies her answers. For example, Garcia testified that, although she prepares small meals, her mother will sometimes have to take over if she needs to lie down.  Similarly, she testified that although she does some household chores such as cleaning the kitchen, the task takes her the entire day.  Garcia claims that the ALJ ignored these qualifications.

She cites *Horton v. Barnhart*, 469 F. Supp. 2d 1041, 1047 (N.D. Ala. 2006), for the proposition that it is error for an ALJ to rely on an incomplete description of a claimant's daily activities.  She cites *Iheanacho v. Berryhill*, 2018 WL 4680173 at *8-9 (N.D. Ala. Sept. 28, 2018), for a similar proposition.  Garcia is correct that "[a]n ALJ may not rely on a claimant's daily activities alone in making a disability determination." *Hill v. Comm'r of SSA*, No. 2:14-cv-01322-SGC, 2015 WL 5559758, at *5 (N.D. Ala. Sept. 18, 2015) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441

(11th Cir. 1997).  However, that is not the case here.  As noted, Garcia testified to being in pain "24/7" and described very severe limitations on her abilities to sit, stand, and walk.  In addition to finding that her testimony was inconsistent with that level of pain, he also considered the fact that there was nothing objectively supporting such a level of pain anywhere in Garcia's medical records.  The ALJ also relied on the fact that Garcia was not treated more aggressively for all her conditions.  As the ALJ put it when commenting on Garcia's claim that she was forced to give up activities she enjoyed, "there is little evidence in the record suggesting a medical reason for the claimant's cessation of those activities during the relevant period in question."  (Tr. at 21).  Thus, it is apparent that the ALJ did not rely *solely* on her reported daily activities in finding that she was not disabled.  Accordingly, his decision was not in violation of the rules discussed in *Horton* and *Iheanacho*.

### V. Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision was based on substantial evidence.  Accordingly, the Commissioner's decision is hereby **AFFIRMED**.

**DONE** and **ORDERED** this December 5, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

14